IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JONNY BAUTISTA CABRAL,     )
             )
   Petitioner,       )
             )
   v.          )   1:26-cv-777 (LMB/WBP)
             )
JEFFREY CRAWFORD, et al.,    )
             )
   Respondents.     )

ORDER

Petitioner Jonny Bautista Cabral ("Cabral"), a native and citizen of the Dominican

Republic, has filed a four-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C.

§ 2241, in which he asserts that he has been illegally detained by the U.S. Department of

Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since

July 18, 2025. Specifically, he alleges that his characterization by DHS as an "applicant for

admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8

U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act and the Administrative

Procedure Act (Count I); and his substantive and procedural due process rights (Counts II and

III). Cabral also requests that the Court order the federal respondents to produce all records

relating to decisions on his arrest and detention (Count IV).

Cabral is currently detained at the Farmville Detention Center, which is within this

Court's jurisdiction and the basis upon which he is suing Jeffrey Crawford, the warden of the

Farmville Detention Center. Cabral has also sued Robert Guadian, the Field Office Director of

the ICE Enforcement and Removal Operations ("ERO") Washington Field Office; Kristi Noem,

the former DHS Secretary; and Pamela Bondi, the Attorney General (collectively, "the federal

respondents"). For the reasons discussed in this Order, the Court finds that Cabral is detained pursuant to 8 U.S.C. § 1226(a). Accordingly, his Petition will be granted as to Count II, and the federal respondents will be ordered to release him from custody and provide him with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).[1]

## I.

According to his Petition, Cabral has resided in the United States since 2023. [Dkt. No. 1] at ¶ 42. Cabral first traveled to New York, where he lived for a few months, before moving to Danville, Virginia in late 2023. Id. Cabral has resided continuously with his cousin in Danville, Virginia, until his detention. Id. He has found steady employment, first working for a painting company, where he "supported efforts to unionize the company and faced retaliation from management as part of a larger union-busting scheme[,]" and then working at a casino to provide for his family. Id. at ¶ 43. Cabral has "applied for and received employment authorization documents under the Deferred Action for Labor Enforcement ("DALE")" program. Id.

On April 25, 2023, the federal respondents issued Cabral a Notice to Appear ("NTA"), which identified Cabral as a noncitizen "present in the United States who has not been admitted or paroled." Id. at ¶ 44. The NTA also charged him with being removable under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without admission or parole or arrival outside of a time and place designated by the Attorney General, beginning petitioner's removal proceedings. Id. According to Cabral's Petition, no further action transpired between Cabral and immigration authorities for the next two years. See id. at ¶¶ 44-45.

_____

[1] Because the Court is granting relief on due process grounds, it need not address Cabrals arguments based on the Immigration and Nationality Act or the Administrative Procedure Act; his procedural due process rights.

On July 18, 2025, during his Master Calendar Hearing at the Sterling Immigration Court, an Immigration Judge—at the federal respondents' request, and over petitioner's objections—dismissed Cabral's removal proceedings. Id. at ¶¶ 45-46. Cabral's Petition alleges that the dismissal "occurred in the context of the Government's broader effort . . . to redirect noncitizens who had been in the United States for less than two years away from [Executive Office for Immigration Review] proceedings and into the expedited removal process—a scheme that deprives individuals of the right to present their claims to an [Immigration Judge] and instead subjected them to rapid, administrative deportation." Id. at ¶ 45. Cabral was detained by ICE officers as he exited the courtroom and has been in ICE custody at the Farmville Detention Center ever since. Id. at ¶ 46.

Cabral timely appealed the dismissal to the Board of Immigration Appeals ("BIA") and requested a Credible Fear Interview ("CFI"); however, because the CFI was scheduled during a time when Cabral's counsel was unavailable, petitioner appeared for his CFI without the assistance of counsel, and he received a negative CFI determination for which he sought review by an Immigration Judge. Id. at ¶¶ 47-48. While that review was pending, DHS filed a motion to remand petitioner's case to an Immigration Judge. Id. at ¶ 48. Cabral did not oppose that motion, and the motion to remand was submitted to the BIA. Id. As of the filing of this Petition, the BIA has not yet ruled on either petitioner's appeal of the Immigration Judge's dismissal of his removal proceedings, or on DHS's motion to remand. Id. Cabral asserts that his prolonged detention, now for more than eight months, has taken a "serious toll on his physical health." Id. at ¶ 49. Specifically, Cabral is suffering from significant dental pain caused by a severely decayed molar, which requires extraction. Id. Despite his repeated complaints, the Farmville

3

Detention Center has failed to provide him with adequate dental care or meaningful treatment to address his condition. Id.

Cabral filed his Petition for Writ of Habeas Corpus on March 20, 2026. [Dkt. No. 1]. This Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to "file either a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818 (E.D. Va.), or an Opposition to the Petition discussing the material differences between Ceba Cinta and this Petition." [Dkt. No. 2] at 1. In response, the federal respondents filed a Notice stating that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in Ceba Cinta" and requesting that this Court "incorporate the filings in Ceba Cinta into the record of this habeas action."[2] [Dkt. No. 4] at 1. Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

## II.

The central question posed in Cabral's Petition is whether he is subject to mandatory detention under § 1225(b)(2) or instead subject to discretionary detention and entitled to a bond hearing under § 1226(a). As the federal respondents argued in their Ceba Cinta opposition—which has been incorporated into the record in this civil action—whether an individual is detained under § 1225(b) or § 1226(a) lies in the "distinction between aliens who are detained

_____

[2] Given the federal respondents' Notice, the Court finds that it need not address Cabral's request that the Court order the federal respondents to produce all records relating to decisions on petitioner's arrest and detention (Count IV). See [Dkt. No. 1] at 28-29.

4

after a lawful admission into the U.S. and those who are present without a lawful admission." Ceba Cinta v. Noem, et al., 1:25-cv-1818, Dkt. No. 9 (E.D. Va. Oct. 28, 2025). According to the federal respondents, anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a) applies only to those who have been given legal status and subsequently placed into removal proceedings. Id. Therefore, they argue that because Cabral has not been admitted "as a legal matter" into the United States, he is inadmissible under 8 U.S.C. § 1182(a), considered to be an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). Id.

This argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as numerous district courts throughout the country have found,[3] is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. See Romero v. Hyde, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while

---

[3] The overwhelming majority of district courts to consider this issue have held that the detention scheme applicable to noncitizens already residing in the United States is 8 U.S.C. § 1226(a). See Barco Mercado v. Francis, 2025 WL 3295903, at *4 nn. 22–23 (S.D.N.Y. Nov. 26, 2025) (collecting hundreds of federal decisions holding that § 1226(a) is the applicable detention scheme for noncitizens already present in the United States); see also Kyle Cheney, Our Running List of Judges Who Have Ruled on ICE's Mass Detention Policy, POLITICO, https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614?_sp_pass_consent=true (last updated Mar. 10, 2026).

Although the Court is aware of the Fifth Circuit's decision reaching a contrary conclusion, Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), that decision is not binding here, see CASA de Md., Inc. v. Trump, 971 F.3d 220, 260 (4th Cir. 2020). Moreover, the Court is unpersuaded by the Fifth Circuit majority's rationale for many of the reasons cogently set forth in Judge Douglas's dissent, which explains that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent.

simultaneously narrowing § 1226(a) such that it would have an extremely limited (if any) application." Lopez Benitez v. Francis, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025). The Court has previously addressed several of these points in Hasan v. Crawford, 800 F. Supp. 3d 641 (E.D. Va. 2025), and adopts the findings and conclusions in Hasan into this Order.

Cabral has been present in the United States since 2023. [Dkt. No. 1] at ¶ 42. Because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already present in the United States," Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), Cabral's detention is governed by § 1226(a). See Abreu v. Crawford, 2025 WL 51475, at *3 (E.D. Va. Jan. 8, 2025) ("There is a statutory distinction between noncitizens who are detained upon arrival into the United States and those who are detained after they have already entered the country, legally or otherwise."). And under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an Immigration Judge, in which an Immigration Judge must determine whether he poses a danger to the community, and whether he is a flight risk. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless an Immigration Judge makes such a determination, Cabral's continued detention is unlawful.

III.

For all these reasons, Cabral's Petition, [Dkt. No. 1], is GRANTED, and it is hereby

ORDERED that Cabral be promptly released from custody, with all his personal property, in order to appear at a bond hearing before an Immigration Judge. Cabral must live at a fixed address which he must provide to the federal respondents[4]; and it is further

---

[4] If petitioner opts to file a pleading in this civil action notifying the federal respondents of his fixed address, petitioner should file that pleading under seal.

6

ORDERED that respondents provide Cabral with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of this Order; and it is further

ORDERED that respondents be and are ENJOINED from denying bond to Cabral on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

ORDERED that, if Cabral is granted bond, respondents be and are ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2); and it is further

ORDERED that respondents file a status report with this Court within 3 days of the bond hearing, stating whether Cabral has been granted bond, and, if his request for bond was denied, the reasons for that denial.

ORDERED that if Cabral is released on bond, the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Cabral unless he (1) commits a violation of any federal, state, or local law; (2) fails to comply with the conditions of his release; (3) fails to attend a properly noticed immigration hearing; or (4) is detained pursuant to a valid, final order of removal.

The Clerk is directed to enter judgment in Cabral's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 24 day of March, 2026.

Alexandria, Virginia

_____/s/_____

Leonie M. Brinkema
United States District Judge